**FILED**
**Jan 18, 2023**
**01:30 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **DEBBIE TAYLOR,** | ) | **Docket No. 2022-08-0265** |
| **Employee,** | ) | |
| **v.** | ) | |
| **THE KROGER CO.,** | ) | **State File No. 85617-2015** |
| **Employer,** | ) | |
| **And** | ) | |
| **BRIDGEFIELD EMPLOYERS INS. CO.,** | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS
### *Decision on the record*

---

Ms. Taylor requested that the Court order Kroger to pay for treatment by a headache specialist and for penalties due to Kroger's refusal to provide one. Kroger contended it had furnished Ms. Taylor all medical treatment it owed her under law. For the following reasons, the Court denies Ms. Taylor's request at this time.

### History of Claim

Ms. Taylor fell and struck her head on October 22, 2015.[1] She went to an emergency room that day, where she reported pain in her head but no loss of consciousness. A CT scan of her head was normal, and she returned to work the next day.

A few weeks later, Kroger offered Ms. Taylor a panel of neurologists, from which she chose Dr. Alan Nadel. Ms. Taylor saw Dr. Nadel in January and told him that her headaches were unchanged since her fall. Dr. Nadel diagnosed "mild" post-traumatic headaches, prescribed medication, and continued Ms. Taylor at full duty. He said he did not "plan any other intervention." However, Ms. Taylor returned in February still experiencing headaches, and Dr. Nadel continued her medications. No other records from Dr. Nadel appear in evidence.

---

[1] Ms. Taylor also injured her left elbow, but that injury is not at issue here.

1

Kroger provided Ms. Taylor with treatment from a second neurologist, Dr. Mohammed Assaf, who first saw her in May 2016. Dr. Assaf noted Ms. Taylor suffered no loss of consciousness from her fall, but her headaches persisted. He diagnosed post-concussion syndrome and continued the medication prescribed by Dr. Nadel. Over the next two-plus years, he maintained the same diagnosis and continued the medications. In all, he saw Ms. Taylor twelve more times before placing her at maximum medical improvement in November 2020 without permanent impairment or permanent restrictions.

Dr. Assaf recommended an evaluation by a neuropsychologist, and Kroger authorized one from Dr. Christopher Bassin. In February 2020, Dr. Bassin recorded Ms. Taylor's continuing headaches and noted her additional complaints of forgetfulness, confusion, and "problems with complex tasks." Collectively, he called those complaints "subjective cognitive difficulties," but he noted Ms. Taylor gave varying dates of their onset and duration. Those inconsistencies led Dr. Bassin to conclude that the other complaints were "very unlikely" associated with the injury.

However, Dr. Bassin said his testing revealed "significant underlying stress or anxiety" that "may well be associated" with Ms. Taylor's injury. Ms. Taylor reported "significant" sleep difficulties, and Dr. Bassin said those difficulties could be related to anxiety; in turn, the anxiety could exacerbate the sleep problems. Thus, Dr. Bassin thought the anxiety and sleep deprivation "could" be exacerbating Ms. Taylor's headaches, and "management of" those problems would possibly improve her level of function.

In May 2022, Ms. Taylor saw psychiatrist Dr. Melvin Golden. He reviewed "extensive records," reiterated Ms. Taylor's traumatic headache complaints, and noted Dr. Bassin's discussion of an anxiety disorder. He found no psychiatric disorders but instead diagnosed migraine headaches from a "traumatic brain injury" and said consideration might be given to "consultation with a headache specialist." But he added that he found it "particularly noteworthy" that Ms. Taylor returned to work two days after the injury.

In August 2022, Kroger wrote Dr. Golden. Specifically, it pointed to Ms. Taylor's not having lost consciousness, her normal CT scan, and that both Drs. Nadel and Assaf found no "neuropsychiatric or neurocognitive deficits." Kroger also reminded that both neurologists returned Ms. Taylor to full duty, and Dr. Assaf assessed no impairment.

Based on those facts, Kroger said it was concerned that the "current headache complaints may not be primarily related" to the injury. Further, because Dr. Assaf is "actively treating" Ms. Taylor, Kroger thought Dr. Goldin's recommendation for a headache specialist "may be redundant."

Against that backdrop, Kroger then asked Dr. Goldin two questions. First, Kroger asked Dr. Goldin if he believed Ms. Taylor's "current headache complaints" primarily related to her injury. Dr. Golden checked "No" and explained by noting: "1) no loss of

2

consciousness or altered state of consciousness; 2) the opinions of respected, board-certified neurologists."

Second, Kroger asked Dr. Goldin if he still believed Ms. Taylor should see a headache specialist "despite the fact that she is already treating with Dr. Assaf, a board-certified neurologist for her headaches." The "yes/no" blanks are distorted on Kroger's filing, but Dr. Goldin wrote the following: "If patient and the two neurologists are comfortable with their opinions, I do not see the need for another neurologist's evaluation, particularly as she has resumed work."

The summarized evidence is the record on which the Court must decide Ms. Taylor's request for a headache specialist—a request she described as one for both additional treatment and an impairment rating. She also requested "penalties and fees."[2]

In support of her request, Ms. Taylor relied on Dr. Goldin's recommendation in his notes for a specialist consultation. She argued that Drs. Nadel and Assaf saw her for six-plus years and did nothing but prescribe medications that have not helped. Further, Dr. Nadel did not offer an opinion regarding impairment, as the law requires a treating physician to do. *See* Tenn. Code Ann. § 50-6-204(k)(4) (2022). She also claimed Dr. Assaf did not clarify whether his rating was based on the AMA Guides, as the law requires. *Id.* at (k)(2)(A). Finally, Ms. Taylor argued that the Court should order Kroger to provide another physician because the record does not show that either Dr. Nadel or Dr. Assaf is a headache specialist.

Kroger countered that Dr. Nadel diagnosed a mild post-traumatic headache and released Ms. Taylor without restrictions. Further, Dr. Assaf found no objective problems, and Ms. Taylor only required conservative treatment for four years. Finally, Kroger asserted it provided the consults from Dr. Bassin and Dr. Goldin.

As to Dr. Goldin, Kroger pointed to his statement that "consideration" might be given to a headache specialist and that he mentioned a particular clinic. However, Kroger said that the named clinic had several neurologists, so it arranged a return to Dr. Assaf. Though he did not change his diagnosis or the medications, Ms. Taylor maintained her desire to see another physician, and that is when Kroger corresponded with Dr. Goldin. His responses to Kroger's questions formed the basis for the denial.

Kroger contended that an employee cannot "demand a new physician simply because she is unhappy with her current one," and Dr. Assaf has not refused to treat her.

---

[2] Ms. Taylor requested a decision on the record Expedited Hearing but also provided four "agreed upon" dates for a hearing. She also said she would testify live. To clarify her request, the Court held a Status Hearing, and Ms. Taylor said she preferred an on-the-record decision. Kroger did not object. The Court entered a Docketing Notice listing the record it would consider and gave the parties time to object to or supplement that record. The Court also allowed the parties until January 10 to file briefs.

Kroger called this request part of "a pattern of requesting new care when [Ms. Taylor] becomes displeased with her current provider," just as she did with Dr. Nadel. Here, Ms. Taylor wants a third neurosurgeon because Dr. Assaf "declined to assign any impairment for her subjective headache complaints."

**Findings of Fact and Conclusions of Law**

At this Expedited Hearing, Ms. Taylor must show she would likely prevail at a hearing on the merits regarding her request for a headache specialist. Tenn. Code Ann. § 50-6-239(d)(1). The Court finds she likely would not for several reasons.

First, Kroger has paid for all injury-related treatment from Dr. Nadel, Dr. Assaf, as well as two other specialist evaluations as required by law. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A).

Second, the record contains no evidence that Dr. Assaf refused to provide further treatment to Ms. Taylor. If a treating physician remains willing and able to treat an employee, then the employer is not obligated to offer a new panel even if the employee is dissatisfied with the physician. *Baker v. Electrolux*, 2017 TN Wrk. Comp. App. Bd. LEXIS 65, at *8-9 (Oct. 20, 2017). Notably, as Kroger pointed out, the record contains no proof of Ms. Taylor's dissatisfaction with Dr. Assaf's treatment, which lasted for over two years, until he placed her at maximum medical improvement. Moreover, neither Dr. Nadel's nor Dr. Assaf's records state the need for another specialist's evaluation.

Third, Kroger is not required to offer another physician for a second opinion, or arguably in this case, a third neurologist opinion regarding the diagnosis. Instead, Tennessee Code Annotated section 50-6-204(a)(3)(C) *only* allows for a second opinion regarding *surgery and diagnosis* from a physician in the same specialty. *See Petty v. Convention Prod. Rigging*, 2016 TN Wrk. Comp. App. Bd. LEXIS 95, at *21 (Dec. 29, 2016) (in the absence of a recommendation for surgery, an employee is not entitled to a second opinion regarding diagnosis).

Fourth, Dr. Goldin explained his initial recommendation for a headache physician when he said "[i]f patient and the two neurologists are comfortable with their opinions, I do not see the need for another neurologist's evaluation, particularly as she has resumed work." Of course, the "patient," Ms. Taylor, is not comfortable with the opinions of Drs. Nadel and Assaf, which is why she requested this hearing. However, parties cannot rely solely on their own medical interpretations of the evidence to successfully support a position. *Lurz v. Int'l Paper Co.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *16 (Feb. 14, 2018). Rather, only medical expert opinions are controlling, and the law does not allow another opinion under these facts.

Because of these findings, the Court need not decide Ms. Taylor's request for

4

penalties.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Taylor's request for another specialist is denied at this time.

2. The Court sets a Status Hearing on **Thursday, March 23, 2023, at 9:30 a.m. Central Time**. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the hearing.

**ENTERED January 18, 2023.**

_Allen Phillips_
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

Exhibits:
1. Wage Statement (April 14, 2021)
2. First Report of Work Injury (April 14, 2021)
3. Declaration of Debbie Taylor (November 14, 2022)
4. St. Francis Hospital (October 22, 2015)
5. Dr. Jeffrey Cole (November 23, 2015)
6. Dr. Matt Nash (December 1, 2015-December 22, 2015)
7. Dr. Jeffrey Cole (December 22, 2015)
8. Dr. Alan Nadel (January 11, 2016-January 16, 2016)
9. Dr. Mohammad Assaf (May 12, 2016)
10. Dr. Mohammad Assaf (August 23, 2016)
11. Dr. Mohammad Assaf (October 25, 2016)
12. Dr. Mohammad Assaf (February 28, 2017)
13. Dr. Mohammad Assaf (April 25, 2017)
14. Dr. Mohammad Assaf (May 23, 2017)
15. Dr. Mohammad Assaf (July 24, 2017)
16. Dr. Mohammad Assaf (November 27, 2017)
17. Dr. Mohammad Assaf (August 30, 2018)
18. Dr. Christopher Bassin (February 25, 2020-February 26, 2020)
19. Dr. Mohammad Assaf (November 19, 2020)
20. Dr. Melvin Goldin (May 24, 2022)
21. Employee's C-42 form (submitted by Employer)
22. October 4, 2021 email from Employee's counsel and attached C-42 form, signed September 30, 2021 (submitted by Employer)
23. Employer's August 4, 2022 letter and medical questionnaire to Dr. Goldin (submitted by Employer)

24. Dr. Goldin's August 8, 2022 response to Employer's August 4, 2022 letter (submitted by Employer)
25. Dr. Assaf's June 7, 2022 medical record (submitted by Employer)

Technical Record:
1. Petition for Benefit Determination (March 9, 2021)
2. Additional Issues of Employer (April 22, 2021)
3. Dispute Certification Notice (April 29, 2021)
4. Request for Expedited Hearing (October 14, 2022)
5. Order on Request for Expedited Hearing (October 18, 2022)
6. Docketing Notice for On-the Record Expedited Hearing

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on January 18, 2023.

| Name | Via Email | Service sent to: |
|---|---|---|
| Andre' C. Wharton, Employee's Attorney | X | andrecwharton@thewhartonlawfirm.com lafranklin@thewhartonlawfirm.com |
| Heather Douglas and Jenna Macnair, Employer's Attorneys | X | hdouglas@manierherod.com jmacnair@manierherod.com ecollins@manierherod.com |

*Penny Shrum*
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental   $ _____ per month

Groceries       $ _____ per month     Telephone       $ _____ per month

Electricity       $ _____ per month     School Supplies $ _____ per month

Water       $ _____ per month     Clothing       $ _____ per month

Gas       $ _____ per month     Child Care       $ _____ per month

Transportation   $ _____ per month     Child Support    $ _____ per month

Car       $_____ per month

Other       $ _____ per month (describe: _____ )

10. Assets:

Automobile       $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House       $ _____     (FMV) _____

Other       $ _____     Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                        RDA 11082